UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLY ELIZABETH
FITZPATRICK,

               Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

Civil Action No.: 17-11543
Honorable Victoria A. Roberts
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 19, 20]**

Plaintiff Holly Elizabeth Fitzpatrick appeals a final decision of

defendant Commissioner of Social Security (Commissioner) denying her

application for disability insurance benefits (DIB) under the Social Security

Act.  Both parties have filed summary judgment motions, referred to this

Court for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).  After review of the record, the Court finds that the

administrative law judge's (ALJ) decision is supported by substantial

evidence, and thus **RECOMMENDS** that:

- Fitzpatrick's motion [ECF No. 19] be **DENIED**;

- the Commissioner's motion [ECF No. 20] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Background and Disability Applications

Fitzpatrick was born on October 2, 1971, making her 42 years old on her alleged onset date of May 10, 2014.  [ECF No. 11-5, Tr. 128].  She has completed schooling through the eighth grade and has prior work history as a "meat clerk" at a grocery store.  [ECF No. 11-2, Tr. 19; ECF No. 11-6, Tr. 148].  Fitzpatrick alleged disability due to arthritis, fibromyalgia, bulging discs/narrowing of the back, Parkinson's disease, depression, migraines, anxiety/panic attacks, chronic fatigue, and restless leg syndrome (RLS).  [ECF No. 11-6, Tr. 147].

After the Commissioner denied her disability application initially, Fitzpatrick requested a hearing, which took place in February 2016; she and a vocational expert (VE) testified.  [ECF No. 11-2, Tr. 26-42].  In a March 24, 2016, written decision, the ALJ found Fitzpatrick to be not disabled.  [*Id.*, Tr. 9-25].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Fitzpatrick timely filed for judicial review.  [*Id.*, Tr. 1-3; ECF No. 1].

**B.      The ALJ's Application of the Disability Framework Analysis**

DIB is available for those who have a "disability."  *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §

404.1520(a)(4).  Second, if the claimant has not had a severe impairment

or a combination of such impairments[1] for a continuous period of at least

12 months, no disability will be found.  *Id.*  Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.*  If the fourth step is reached, the Commissioner considers its

assessment of the claimant's residual functional capacity, and will find the

claimant not disabled if he or she can still do past relevant work.  *Id.*  At the

---

[1] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c).

final step, the Commissioner reviews the claimant's RFC, age, education

and work experiences, and determines whether the claimant could adjust to

other work.  *Id.*  The claimant bears the burden of proof throughout the first

four steps, but the burden shifts to the Commissioner if the fifth step is

reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Applying this framework, the ALJ concluded that Fitzpatrick was not

disabled.  At the first step, she found that Fitzpatrick had not engaged in

substantial gainful activity since her alleged onset date.  [ECF No. 11-2, Tr.

14].  At the second step, the ALJ found that Fitzpatrick had the severe

impairments of "degenerative disc disease; fibromyalgia; arthritis;

migraines; chronic pain syndrome; restless leg syndrome; and mood

disorder with depressive features."  [*Id.*, Tr. 15].  Next, the ALJ concluded

that none of her impairments, either alone or in combination, met or

medically equaled the severity of a listed impairment.  [*Id.*, Tr. 15-16].

Between the third and fourth steps, the ALJ found that Fitzpatrick had

the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a),

except that:

> [S]he could stand and walk no more than 2 of 8 hours.  Sitting
> would be unlimited with the exception that she would need to
> have a sit/stand option every 20 minutes.  She would be limited
> to frequent handling and fingering with the right upper

4

extremity.  She could occasionally climb, stoop, kneel, crouch, or crawl, but could never climb ladders, ropes, or scaffolds. She would be limited to frequent balancing, reaching, pushing, and pulling, but no pushing or pulling of pedals or levers with the lower extremities.  She would need to avoid hazards such as moving machinery and unprotected heights.  She could not be exposed to extremes of temperature.  She is limited to moderate noise level, such as an office environment.  She is limited to simple, routine, 1-3 step instructions, in a low stress environment, defined as no quick decisions and no quick judgment required on the job.  She should have no interaction with the public and only occasional interaction with co-workers and supervisors.  She would be unable to perform jobs that are fast pace, high production, or have frequent changes in task expectations or locations.

[*Id.*, Tr. 16-17].  At the fourth step, the ALJ concluded that Fitzpatrick could not perform her past relevant work.  [*Id.,* Tr. 19].  At the final step, after considering Fitzpatrick's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Fitzpatrick could perform work as a general office clerk and sorter, which exist in significant numbers in the national economy.  [*Id.*, Tr. 24-25].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Fitzpatrick argues that the ALJ's credibility determination was unsupported; that the ALJ violated the treating physician rule and improperly interpreted raw medical data; and that some of Fitzpatrick's severe impairments were not accounted for in the RFC.  The Court disagrees, finding that the ALJ's decision is supported by substantial evidence, and recommends that it be affirmed.

### B.

At the hearing, Fitzpatrick testified that she had extreme pain throughout her back, neck, and legs, and that she had a hard time walking due to her pain and joint stiffness.  [ECF No. 11-2, Tr. 31].  She also testified that she suffers from headaches "all the time" and migraines two to three times per month.  [*Id.*].  She stated that her back pain interferes with her ability to cook dinner, as she cannot stand longer than five to ten

6

minutes without shooting pains, and that numbness in her hands interferes with her ability to grab things and perform fine manipulations. [*Id.*, Tr. 33-34].

Fitzpatrick further testified that her shoulder pain prevents her from lifting, pulling, and reaching, and that her migraine medications make her very tired. [*Id.*, Tr. 35-36]. She stated that her mother helps her with laundry and grocery shopping, that she needs assistance showering, and that she has bad days "a couple of times a week" where she cannot get out of bed due to debilitating pain. [*Id.*, Tr. 36-37].

The ALJ found that Fitzpatrick's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. [ECF No. 11-2, Tr. 17]. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Fitzpatrick argues that the ALJ offers no specific reasons for discounting her credibility, in violation of SSR 96–7p, 1996 WL 374186.[2]

---

[2] This regulation has been superseded by SSR 16-3P, 2017 WL 5180304, but was in effect at the time of the ALJ's decision and thus governs this matter.

But the ALJ wrote that her credibility determination was based on "the reasons explained in this decision," and directly afterwards began analyzing the objective record evidence. [ECF No. 11-2, Tr. 18]. The ALJ noted that, at the consultative examination with Leonidas Rojas, M.D., Fitzpatrick had mild tenderness and moderate restriction of the neck and back, but no difficulty standing up from a chair or getting on or off of the examining table. [*Id.*, citing ECF No. 11-7, Tr. 212]. She performed fine and gross manipulation, had normal cranial nerves, speech, and coordination, her gait was "essentially normal," and she had only mild weakness and mild sensory deficit of the right leg. [ECF No. 11-7, Tr. 213].

In August 2014, three months after her prior denial of Social Security benefits, Fitzpatrick saw Bradley J. Ayman, D.O., and reported that she suffered one headache per week. [ECF No. 11-2, Tr. 18, citing ECF No. 11-7, Tr. 202]. Dr. Ayman found her to have largely normal results upon examination, including five-out-of-five strength, intact sensations, and unremarkable gait. [ECF No. 11-7, Tr. 204]. He recommended increasing her Neurontin dosage, continuing Imitrex, and proceeding with a brain MRI, which was negative. [*Id.*, Tr. 204-05, 239]. Dr. Ayman saw no evidence of parkinsonism, but did find symptoms "strongly suggesting restless leg syndrome and periodic limb movements." [*Id.*, Tr. 204]. In September

2014, Fitzpatrick received bilateral occipital nerve blocks (injections), which were repeated in December and in January 2015. [*Id.*, Tr. 223, 229, 237].

Dr. Aymen saw Fitzpatrick again in January 2015, noting low-grade daily headaches and findings similar to her last visit. [*Id.*, Tr. 224]. He increased her Neurontin once again, arranged for repeat bilateral occipital nerve blocks, and replaced Imitrex with Maxalt-MLT. [*Id.*]. This was Fitzpatrick's last visit of record with Dr. Aymen. [ECF No. 11-2, Tr. 18].

Fitzpatrick began pain management in May 2015, with a lumbar spine MRI revealing mild degenerative facet arthropathy involving the mid and lower lumbar spine without evidence of central canal narrowing or a focal lumbar disc herniation. [ECF No. 11-2, Tr. 18, citing ECF No. 11-7, Tr. 260]. In September 2015, she was examined by Eric A. Kovan, D.O., who made what the ALJ assessed as "fairly normal" findings. [ECF No. 11-2, Tr. 18]. Fitzpatrick had no dysarthria, aphasia, or anomia, grossly intact cranial nerves, intact sensory to light touch and position sense, and cerebellar examination with finger-to-nose grossly intact. [ECF No. 11-7, Tr. 256]. Her strength was globally five-out-of-five, with giveaway weakness at times, and she had full range of motion, upper motor neuron signs, no pathology, and no cervical lymphadenopathy. [*Id.*].

Dr. Kovan examined her again in November 2015,[3] finding a limited range of motion of the neck and multiple trigger points in the cervical and lumbar area.  [*Id.,* Tr. 253].  Her results were otherwise normal, including negative straight leg raising, and she was given a Toradol injection for her headache.  [*Id.*].  Physical therapy was recommended.  [*Id.*].

Contrary to Fitzpatrick's argument, the ALJ did explain her reasons for finding that Fitzpatrick's statements about the extent of her limitation were not entirely credible; the ALJ relied on the objective medical record, which showed normal and mild examination results and negative test results.  The ALJ's reasoning finds support in the record, and the Court finds no reason to disturb the ALJ's credibility determination.

## C.

Fitzpatrick argues that the ALJ violated the treating physician rule by giving insufficient weight to the opinion of Matthew Benedix, D.O, without providing good reasons.  She also contends that the ALJ failed to adopt any physician's opinion on Fitzpatrick's physical impairments, instead impermissibly relying on her own interpretation of the medical data.  The Commissioner responds that the ALJ appropriately weighted the

---

[3] The ALJ mistakenly refers to this visit as occurring in October. [ECF No. 11-2, Tr. 18].

physicians' opinions and that she is not required to base the RFC on a medical opinion.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  This procedural safeguard not only permits "meaningful

appellate review," but also ensures that claimants "understand the

disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation

marks and citation omitted).  Courts will not hesitate to remand when the

ALJ failed to articulate "good reasons" for not fully crediting the treating

physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th

Cir. 2004).

Fitzpatrick had previously been denied disability in a decision issued

on May 9, 2014.  [ECF No. 11-3, Tr. 43-60].  The current ALJ is bound by

this prior decision unless presented with new and material evidence.

Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998) (ALJ

must adopt findings in prior final decision "unless there is new and material

evidence relating to such a finding or there has been a change in the law,

regulations or rulings affecting the finding or the method for arriving at the

finding."); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th

Cir. 1997) ("When the Commissioner has made a final decision concerning

a claimant's entitlement to benefits, the Commissioner is bound by th[at]

determination [when adjudicating a subsequent claim] absent changed

circumstances.") (citations omitted).  Here, the ALJ found that that there

was new evidence showing a new and material change in circumstances—

though no worsening—since the May 9, 2014, decision, and that she was thus unbound by the prior decision.  [ECF No. 11-2, Tr. 12, 18].

Dr. Benedix opined that Fitzpatrick could stand or walk for a total of two hours in a work day, and could stand or walk without interruption for a half hour.  [ECF No. 11-7, Tr. 279].  The same restrictions applied to Fitzpatrick's ability to sit during the work day, with Dr. Benedix stating that she "needs to frequently change positions."  [*Id.*, Tr. 280].  She could occasionally carry up to ten pounds, and could never climb, balance, stoop, crouch, kneel, or crawl.  [*Id.*].  Dr. Benedix assessed additional physical and environmental restrictions, citing to Fitzpatrick's low back pain and fatigue.  [*Id.*, Tr. 281-82].  The ALJ found that Dr. Benedix's February 2016 statement was due some weight, but that the "extreme limitations, particularly with sitting and postural activities," were based primarily on Fitzpatrick's subjective complaints.  [*Id.*, Tr. 19].

Fitzpatrick contends that Dr. Benedix's opinion is only inconsistent with "the ALJ's selective reading" of the record, [ECF No. 19, PageID.360], but she cites no objective medical record that supports Dr. Benedix's opinion.  Fitzpatrick offers only that Donald H. Kuiper, M.D., "imposed similar limitations."  [*Id.*].  Dr. Kuiper, a state agency consultant, reviewed the medical record in October 2014, finding that Fitzpatrick would require a

13

"sit/stand option during which she can stand for 20 mins followed by 5-10 mins of sitting, alternating up to 3 times/hour." [ECF No. 11-3, Tr. 71].  This is the exact restriction present in the prior decision's RFC, from which Dr. Kuiper saw no reason to diverge.  [*Id.*, Tr. 50, 71-72].

The present ALJ found that Fitzpatrick's condition had not worsened since the prior decision.  [ECF No. 11-2, Tr. 18].  Yet she found that Dr. Kuiper's opinion was not due significant weight with regard to the sitting limitation, stating that the limitation was "not consistent with prior findings and not supported by any medical evidence."  [*Id.*, Tr. 19].  Thus, the assessed RFC only included a standing and walking restriction of no more than two out of eight hours, and allowed for unlimited sitting with a sit/stand option every 20 minutes.  [*Id.*, Tr. 16].

As noted above, Fitzpatrick had normal to mild results in her consultative examination with Dr. Rojas, [ECF No. 11-7, Tr. 212-13], a negative brain MRI, [*Id.*, Tr. 239], largely normal results upon multiple examinations with Dr. Ayman, [*Id.*, Tr. 202, 204-05, 223-24, 229, 237], and only saw Dr. Ayman regarding her headaches from August 2014 to January 2015 [ECF No. 11-2, Tr. 18].  Fitzpatrick's lumbar spine MRI showed only mild degenerative facet arthropathy, and she had fairly normal results upon examination by Dr. Kovan in 2015 as well.  [ECF No. 11-7, Tr. 253, 256,

14

260].  These constitute good reasons for the ALJ to give only some weight

to Dr. Benedix's opinion; the opinion is not supported by and is inconsistent

with other substantial evidence.  *Gentry*, 741 F.3d at 727-29; *Rogers,* 486

F.3d at 242-43.  And the cited evidence supports the ALJ's decision to

decline to adopt the portion of Dr. Kuiper's opinion regarding sitting

limitations.  Other than noting that the two opinions are somewhat

consistent with one another, Fitzpatrick fails to point to any evidence in

support of either opinions' restrictions, and thus does not meet her burden

of proof.  *Preslar*, 14 F.3d at 1110.

The only other opinion of record regarding Fitzpatrick's physical

impairments is that of consultative examiner Dr. Rojas.  [ECF No. 11-7, Tr.

211-17].  The ALJ gave his opinion some weight, but found it "vague" and

lacking in "specific functional limitations to entitle it to significant weight."

[ECF No. 11-2, Tr. 19].  Fitzpatrick does not contend that the ALJ erred in

this analysis.  Instead, she argues that the RFC lacks foundation because

the ALJ failed to fully credit any one medical opinion.  She cites *Mason v.

Comm'r of Soc. Sec.,* 2008 WL 1733181, at *13 (S.D. Ohio 2008), which

states, "The ALJ must not substitute his own judgment for a doctor's

conclusion without relying on other medical evidence or authority in the

record."  But the ALJ did exactly that; she cited a litany of medical evidence

15

from the record—as reviewed above—to support her conclusion that

Fitzpatrick was not limited in sitting beyond needing a sit/stand option every

20 minutes.

As the Commissioner notes, an ALJ's RFC need not be based

directly on a medical opinion.  "The ALJ is charged with the responsibility of

determining the RFC based on her evaluation of the medical and non-

medical evidence."  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728

(6th Cir. 2013).  Requiring the ALJ to strictly base her RFC on a medical

opinion would be an abdication of this responsibility.  *Id.*  (citing SSR 96–

5p, 1996 WL 374183 (July 2, 1996)).  And the consistency of two opinions

with one another does not require that either opinion be fully adopted by

the ALJ.  *See, e.g., Hornback v. Comm'r of Soc. Sec.*, No. 16-298, 2017

WL 1173476, at *4 n.3 (W.D. Mich. Mar. 30, 2017); *Edwards v. Comm'r of*

*Soc. Sec.*, No. 13-637, 2015 WL 13035384, at *3 (S.D. Ohio Mar. 31,

2015).  The Commissioner also points out that, with the exception of the

sitting limitation, Dr. Kuiper's identified limitations were consistent with the

assessed RFC.  [*Compare* ECF No. 11-2, Tr. 16-17 *with* ECF No. 11-3, Tr.

70-72].  Fitzpatrick's argument that the ALJ committed reversible error,

either in treatment of opinion evidence or her support for the RFC, is

without merit.

**D.**

Lastly, Fitzpatrick argues that the ALJ failed to account for her severe

impairments of migraines, fibromyalgia, restless leg syndrome, and fatigue.

Regarding migraines, Fitzpatrick argues that her inability to do anything for

at least two to three days per month is disabling. [ECF No. 19,

PageID.363]. But her only support for this restriction is her testimony,

which was only partially credited by the ALJ. The RFC includes

environmental restrictions intended to accommodate the headache and

migraine issues that the ALJ found credible, and Fitzpatrick fails to show

with record evidence that further restriction was necessary.

Regarding the other ailments, Fitzpatrick does not identify where the

RFC fell short and how a sedentary work restriction with limited walking (in

accordance with Dr. Benedrix's opinion), a sit/stand option, postural

limitations, and a limitation to simple, routine, low stress work would not

accommodate her. [*See* ECF No. 11-2, Tr. 16-17]. Fitzpatrick has also

failed to develop these arguments to a reasonable degree, so the Court

deems them waived. *McPhereson v. Kelsey*, 125 F.3d 989, 995 (6th Cir.

1997), *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir.

2011).

17

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Fitzpatrick's motion for summary judgment be [ECF No. 19] be **DENIED**;

that the Commissioner's motion [ECF No. 20] be **GRANTED**; and that the

Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42

U.S.C. § 405(g).


                                        s/Elizabeth A. Stafford
                                        ELIZABETH A. STAFFORD
Dated: June 18, 2018                    United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.

Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on June 18, 2018.

s/Marlena Fitzpatrick
MARLENA FITZPATRICK
Case Manager